**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

THERESA G.,

                Plaintiff,

   v.                                    5:20-CV-362
                                              (DJS)

ANDREW M. SAUL, *Commissioner of*
*Social Security*,

                Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

CHERMOL & FISHMAN, LLC       DAVID F. CHERMOL, ESQ.
Attorney for Plaintiff
11450 Bustleton Avenue
Philadelphia, PA 19116

U.S. SOCIAL SECURITY ADMIN.    HUGH DUN RAPPAPORT, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  See Dkt. No. 7 & General Order 18.

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 13 & 19.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted.  The Commissioner's decision is affirmed and the Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1967.  Dkt. No. 12, Admin. Tr. ("Tr."), p. 40.  She has Bachelor's and Master's Degrees.  Tr. at p. 41.  She has past work experience in the field of social work.  Tr. at p. 167.  Plaintiff alleges disability based upon colitis, depression, anxiety, migraines, and hypothyroidism.  Tr. at p. 165.

### B. Procedural History

Plaintiff applied for disability and disability insurance benefits in April 2017.  Tr. at pp. 153-154.  She alleged a disability onset date of November 1, 2016.  Tr. at p. 153.  Plaintiff's application was initially denied on July 5, 2017, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 10 & 101-102.  Plaintiff appeared at a hearing before ALJ Gretchen Mary Greisler on January 31, 2019 at which she and a vocational expert testified.  Tr. at pp. 33-72.  On February 22, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 10-23.  On February 4, 2020, the Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2022 and that she had not engaged in substantial gainful activity since November 1, 2016, the alleged onset date. Tr. at p. 12. Second, the ALJ found that Plaintiff had the following severe impairments: colitis, gastroparesis, cyclic vomiting syndrome, abdominal migraine, hypertension, obesity, adjustment disorder with mixed anxiety and depressed mood, depressive disorder, anxiety disorder, syncope, cardiomyopathy, and migraine headache. Tr. at pp. 12-23. Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 13-16. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, though with certain limitations. Tr. at p. 16. Fifth, the ALJ found that Plaintiff could perform her past relevant work in the social work field. Tr. at pp. 21-22. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 22.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### C. The Parties' Briefings on Their Cross-Motions

In her brief, Plaintiff makes four principal arguments. First, she contends that the ALJ failed to include any mental functioning limitations in Plaintiff's RFC. Dkt. No. 13, Pl.'s Mem. of Law, pp. 7-11. Second, Plaintiff contends that the ALJ erred in finding that Plaintiff could perform her past relevant work. *Id.* at pp. 12-14. Third, Plaintiff contends that the ALJ failed to properly consider whether she could sustain competitive work activity in light of her medical treatment. *Id.* at pp. 14-18. Finally, Plaintiff alleges that the ALJ's decision failed to adequately accommodate Plaintiff's gastrointestinal impairments. *Id.* at pp. 18-21.

In response, Defendant contends that the ALJ's RFC finding was supported by substantial evidence. Dkt. No. 19, Def.'s Mem. of Law, pp. 3-15. Defendant also asserts

that substantial evidence supports the ALJ's conclusion that Plaintiff could perform her past relevant work. *Id.* at pp. 16-18.

### III. ANALYSIS

### A. The Mental Limitations in Plaintiff's RFC

The ALJ found Plaintiff had a mild limitation in the area of concentrating, persisting, and maintaining pace. Tr. at p. 14. The ALJ also found Plaintiff to have a moderate limitation in adapting and managing oneself. *Id.* Based on those findings, the ALJ concluded that Plaintiff could perform sedentary work though with limitations including "a low level of work pressure, defined as work not requiring multitasking or a high production-rate pace." Tr. at p. 16.

Plaintiff's first argument is a narrow one - confined to the ALJ's alleged failure to include any limitations with regard to the mental functioning limitations found by the ALJ in the RFC. Pl.'s Mem. of Law at p. 8, n. 2 ("the issue is solely whether the finding of at least some degree of mental functional limitation was accounted for in the RFC. Because the ALJ failed to include any mental functional limitations in the RFC, that RFC was defective as a matter of law."); *see also id.* at p. 9 ("the ALJ here did not include mental functional limitations in her RFC finding"). It is clear, however, that the RFC limitations identified above do address the mental functioning limitations found by the ALJ. The applicable regulations identify the ability to handle work pressure as a "mental activi[ty]" that affects an individual's ability to work. 20 C.F.R. § 404.1545(c). An RFC that limits an individual to no multi-tasking and no fast-paced production rate

7

work does address a claimant's mental abilities. *Lanthier v. Colvin*, 2015 WL 6554972, at *6 (W.D.N.Y. Oct. 29, 2015); *see also Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 438 (W.D.N.Y. 2019). Plaintiff's brief seems to concede as much when it refers to the reduced stress work environment as "the only mental restriction in the RFC." Pl.'s Mem. of Law at p. 12. Plaintiff's suggestion that the RFC contained *no* limitation on mental functioning is simply wrong as a factual matter and no basis for remand.[2]

### B. The Impact of Plaintiff's Medical Treatment on her Ability to Work

Plaintiff next argues that the ALJ failed to properly evaluate the impact her extensive history of medical treatment and hospitalizations had on her ability to maintain the necessary level of attendance at work to sustain competitive employment. Pl.'s Mem. of Law at pp. 14-18. Having considered the record and the arguments of the parties, the Court does not believe that an error requiring remand occurred with respect to this question.

Plaintiff's argument is based on her extensive record of medical appointments and emergency room visits, particularly in 2017, when by her estimation she would have missed 40 days of work as a result of that treatment. Pl.'s Mem of Law at p. 17. When combined with the vocational expert's testimony that an employee could not maintain

---

[2] This section of Plaintiff's Brief also raises a question concerning her ability to perform her past relevant work. Pl.'s Mem. of Law at pp. 10-11. That argument relates to the classification of her past work as skilled employment. This argument also focuses, however, on the incorrect assumption about that the ALJ "failed to consider" or omitted mental functional limitations from the RFC. *Id.* at p. 11.

employment if they were absent three to four times each month, Tr. at pp. 70-71, Plaintiff contends that the ALJ erred in finding that she could sustain employment.

Plaintiff is correct "that a relevant factor in determining a claimant's RFC is the ability to work a consistent schedule on a continuing basis." *Brenda R. v. Comm'r of Soc. Sec.*, 2018 WL 4144681, at *8-9 (D. Vt. Aug. 30, 2018). "Absenteeism due to frequency of treatment is a relevant factor" in determining an individual's ability to work. *Lucas v. Comm'r of Soc. Sec.*, 2020 WL 5748098, at *3 (W.D.N.Y. Sept. 25, 2020). However, "[t]he number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 Fed. Appx. 902, 904 (11th Cir. 2017). "A finding of disability must rest on a claimant's medically determinable impairment, not on factors such as the need to attend appointments." *Lindsley v. Colvin*, 2017 WL 473652, at *5 (W.D.N.Y. Feb. 4, 2017) (citing SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996)).

Here, Plaintiff fails to establish that her medical treatment could not have been scheduled to accommodate a typical work schedule, especially since many of her appointments were brief, 20-30-minute appointments. *See*, *e.g.*, Tr. at pp. 409-416. *Cherkaoui v. Comm'r of Soc. Sec.*, 678 Fed. Appx. at 904 ("nothing in the record indicates that [plaintiff] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work."); *Lucas v. Comm'r of Soc. Sec.*, 2020 WL 5748098, at *3 ("there was no evidence

that such appointments could not be scheduled to accommodate a full-time work schedule."); *Brenda R. v. Comm'r of Soc. Sec.*, 2018 WL 4144681, at *8-9 ("Plaintiff has failed to demonstrate that she would be unable to schedule her required treatment visits around a full-time work schedule."). This case is unlike others where the ALJ was found to have failed to properly account for treatments that could take hours each day. *See Lucas v. Comm'r of Soc. Sec.*, 2020 WL 5748098, at *3 (citing cases).

Dr. Noia, who performed a consultative exam, and whose opinion was given weight by the ALJ, Tr. at p. 21, opined that Plaintiff "had no limitations sustaining an ordinary routine and regular attendance at work." Tr. at p. 1038. Plaintiff does not challenge the ALJ's decision to afford this opinion weight nor offer any evidence of any contrary medical opinion in the record. Contrary to Plaintiff's argument that her record of treatment was not considered, it is clear that the ALJ did specifically consider Plaintiff's frequent treatment and hospitalizations. Tr. at pp. 16-19. Accordingly, the Court concludes "that substantial evidence does not support Plaintiff's claim that the ALJ erred in failing to consider her need for frequent treatment in determining her RFC. The ALJ did in fact summarize and discuss Plaintiff's frequent treatment, . . . in detail in her decision." *Brenda R. v. Comm'r of Soc. Sec.*, 2018 WL 4144681, at *8. This ground, therefore, is not a basis for remand.

### C. The ALJ's Consideration of Plaintiff's Gastrointestinal Impairments

Plaintiff next contends that the ALJ erred in failing "to adopt reasonable limitations" related to her various gastrointestinal impairments. Pl.'s Mem. of Law at

p. 18. The ALJ found that Plaintiff suffered from several such impairments, Tr. at p. 12, and noted in her RFC that Plaintiff "requires ready access to a restroom, but the need to use the restroom can be accommodated by the normal morning, lunch, and afternoon breaks." Tr. at p. 16. Plaintiff objects that the ALJ's conclusion regarding accommodating Plaintiff's need to use the bathroom is not supported by the record. The Court finds this argument no basis for remand.

Plaintiff testified that she needs to use the bathroom "several times a day," Tr. at p. 49, and the ALJ credited that testimony and specifically noted that "she requires ready access to the bathroom." Tr. at p. 16. Plaintiff's objection appears to be the ALJ's conclusion that this could be accommodated by morning, lunch, and afternoon breaks, is unsupported by any medical opinion. Pl.'s Mem. of Law at p. 19. As Plaintiff concedes, however, "[n]o treating or examining physician has opined as to the functional impact" of Plaintiff's conditions on her need to use the restroom. *Id.* As a result, the limitation appears to have been included solely based on the ALJ's crediting of Plaintiff's subjective complaints. Given the lack of any medical opinion stating that Plaintiff needed such an accommodation, it would not have been error for the ALJ to omit it from the RFC. The fact that a limitation was included despite its absence from any medical opinion means simply that the RFC was "more generous" than the medical opinions required and "where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Beaman v. Comm'r of Soc. Sec.*, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020) (quoting *Baker*

11

*v. Berryhill*, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018)). In fact, "even if the ALJ did commit error, which the Court finds she did not, it was harmless since the ALJ's RFC finding was more favorable to Plaintiff than [any other] opinion." *Sarah C. v. Comm'r of Soc. Sec.*, 2021 WL 1175072, at *11 (N.D.N.Y. Mar. 29, 2021).

While Plaintiff objects to the ALJ speculating as to the type of accommodation that is appropriate, this case is unlike one where a medical opinion identified a specified need for restroom access and the ALJ determined on her own accord that less access was required. *See Sheri S. v. Berryhill*, 2019 WL 1429522, at *4 (N.D.N.Y. Mar. 29, 2019). Instead, here, the RFC was guided by, and not inconsistent with, Plaintiff's testimony regarding the need to use the bathroom "several times a day." Tr. at p. 49. Plaintiff's reliance on *Balsamo v. Chater* and similar cases is misplaced because in those cases the error arose from ALJs substituting their own opinions for those of medical professionals. 142 F.3d 75, 81 (2d Cir. 1998). Here, there was no contrary medical opinion and so the ALJ did not improperly substitute her opinion for that of a medical professional.

Plaintiff also suggests that the ALJ failed to develop the record with respect to these medical conditions. *See* Pl.'s Mem. of Law at pp. 17-18. This argument appears to be limited to an absence of testimony from the vocational expert as to Plaintiff's "number of absences clearly established by the record." *Id.* at p. 17. While the ALJ does have a standing duty to develop the record, that duty "is not unlimited and is discharged when the ALJ 'possesses the claimant's complete medical history' and there

12

are no 'obvious gaps or inconsistencies' in the record." *Camellia O. v. Comm'r of Soc. Sec.*, 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)). There is no claim here that the medical record is incomplete. Plaintiff's counsel questioned the vocational expert about whether an individual would be able to sustain employment if they missed three to four days of work a month. Tr. at pp. 70-71. Counsel did not choose, as he certainly could have had he believed there was a gap in the record, to ask the vocational expert about Plaintiff's particular record of absences. *Id.* The ALJ clearly was aware of that history and so it is entirely unclear what additional development of the record as to that issue Plaintiff believes the ALJ should have undertaken.

### D. Whether Plaintiff Could Perform Her Past Relevant Work

Plaintiff's final argument is that the ALJ erred in finding that Plaintiff could perform her past relevant work as a social worker. Pl.'s Mem. of Law at pp. 12-14. Plaintiff argues that the ALJ's finding that Plaintiff should be limited in terms of work stress and high production are inconsistent with the work performed by a social worker. *Id.* at pp. 12-13. Plaintiff also appears to argue that the ALJ failed to clarify confusion on the part of the vocational expert during questioning. *Id.* at p. 14. Neither argument warrants remand.

The vocational expert testified that he would categorize Plaintiff's past relevant work as meeting three job titles: social worker, caseworker, and resident supervisor. Tr. at p. 64. In response to hypotheticals posed by the ALJ that were consistent with the

ultimate RFC determination, the vocational expert testified that an individual with the stated limitations could perform the work of a social worker and caseworker, but not resident supervisor. Tr. at pp. 66-67. As set forth above, the Court finds no error in the ALJ's RFC determination that requires remand. "Given that the ALJ's hypothetical to the VE accurately reflected Plaintiff's limitations, the VE's testimony that Plaintiff could perform this work provided substantial evidence for the ALJ's finding." *Melisa G. v. Berryhill*, 2019 WL 2502726, at *4 (N.D.N.Y. June 17, 2019); *see also Tammy B. v. Berryhill*, 2019 WL 79020, at *9 (N.D.N.Y. Jan. 2, 2019); *Carlos R. C. G. v. Berryhill*, 2018 WL 4554495, at *9 (N.D.N.Y. Sept. 21, 2018).

To the extent that Plaintiff asserts that the ALJ erred because the vocational expert was unclear about the nature of the hypothetical posed, the record demonstrates otherwise. During the testimony of the vocational expert, the ALJ posed a hypothetical in which the ALJ asked about an individual who can "tolerate a low level of work pressure, defined as work not requiring multi-tasking or a high production rate pace." Tr. at p. 65. The ALJ asked the vocational expert if he needed any part of the hypothetical repeated or clarified. *Id.* The vocational expert asked, "Your Honor, the -- you mentioned low level, I believe stress correct?" *Id.* The ALJ responded "a low level of work pressure, defined as work not requiring multi-tasking or a high production rate pace." *Id.* The vocational expert then indicated "[t]hat's the clarification I was seeking." Tr. at p. 66. The vocational expert asked a question about the hypothetical and then specifically stated that he had received the necessary clarification. That

exchange does not suggest that the expert was unclear about the hypothetical. Significantly, Plaintiff's counsel was afforded the opportunity to question the vocational expert and did not seek to clarify what Plaintiff now claims was "a flawed and confusing hypothetical question."  Pl.'s Mem. of Law at p. 14; Tr. at pp. 70-71 (questioning of vocational expert by counsel).  This failure strongly suggests "that the hypothetical was clear in context."  *Stackhouse v. Berryhill*, 2018 WL 4292155, at *5 (W.D.N.Y. Sept. 10, 2018).  For these reasons, the ALJ's conclusion that Plaintiff could perform her past work is supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-

Decision and Order on the parties.

Dated: April 19, 2021
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge